## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

LANDSTAR RANGER, INC.,

    Plaintiff,

v.

Case No. 3:24-cv-857-MMH-LLL

JC TANDA TRANSPORT, INC.,
et al.,

    Defendants.

## **O R D E R**

**THIS CAUSE** is before the Court on Defendant, JC Tanda Transport, Inc.'s, Motion to Dismiss Count III of Plaintiff's Second Amended Complaint (Doc. 32; Motion), filed on December 9, 2024. In the Motion, Defendant JC Tanda Transport, Inc. seeks dismissal of the claim in Count III of Plaintiff, Landstar Ranger, Inc.'s Second Amended Complaint (Doc. 30; Second Amended Complaint) under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)). Landstar timely responded in opposition to the Motion. See Response in Opposition to Defendant JC Tanda Transport, Inc.'s Motion to Dismiss Count

III of the Amended Complaint (Doc. 35; Response), filed on December 26, 2024.[1] Accordingly, this matter is ripe for review.

## I. Legal Standard

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 & n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible

---

[1] On February 14, 2025, Tanda filed an unopposed motion for a hearing on the Motion. See Defendant, JC Tanda Transport, Inc.'s, Unopposed Motion for Hearing Regarding Dispute on Motion to Dismiss (Doc. 36; Motion for Hearing). The Court had already determined resolution of the Motion before the Motion for Hearing was filed, and, as such, no hearing is necessary and the Motion for Hearing will be denied.

- 2 -

on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has failed to meet their pleading burden under Rule 8. Id. at 679.

The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotation marks and quoted authority omitted)). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II.   Background[2]

Landstar is a property broker authorized by the Federal Motor Carrier Safety Administration to arrange for the interstate transportation of property by motor carriers. Second Amended Complaint ¶¶ 1, 3. Landstar is also an authorized motor carrier. Id. ¶ 3. Tanda is a licensed motor carrier but is not a property broker. Id. ¶¶ 1, 6, 46. Landstar contracted with Tanda to deliver Landstar's customer's cargo from Virginia to Wisconsin. Id. ¶¶ 17, 47; see also Exhibit A (Second Amended Complaint at 16–25; Contract). In the Contract the parties define Landstar as the "Broker" and Tanda as the "Carrier." See Contract. According to the Contract, the "Broker desires to engage Carrier to perform transportation services for shipments within the limits of Carrier's motor carrier operating authorities." Contract at 1. It goes on to state: "Carrier shall be wholly responsible for performing the contemplated transportation … ." Contract ¶ 8. Additionally, under the Contract, "[i]n the event of loss, damage or delay in delivery, Carrier shall be liable for damage arising therefrom … ." Contract ¶ 11. The terms of the Contract prohibit Tanda from subcontracting

---

[2] In considering the Motion, the Court must accept all factual allegations in the Second Amended Complaint as true, consider the allegations in the light most favorable to Landstar, and accept all reasonable inferences that can be drawn from such allegations. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Second Amended Complaint and may well differ from those that ultimately can be proved.

the transportation, but provide that if Tanda does so, "Carrier shall remain directly liable to Broker as if Carrier transported such freight under its own authority" and that Tanda must indemnify Landstar for any damages relating to the use of a subcontractor. Contract ¶ 17. In addition to the Contract, Landstar issued Tanda a "Load Confirmation" with additional terms and requirements for the load and specifying the amount Tanda was to be paid. See Exhibit C (Second Amended Complaint at 28–30; Load Confirmation).

Despite the contractual prohibition against subcontracting, Tanda arranged for another motor carrier, Defendant Ghotra Boy Transport, Inc. (GBT), to complete the shipment. Second Amended Complaint ¶¶ 18, 48, 49.[3] A bill of lading for the load identifies GBT as the carrier picking up and scheduled to deliver the cargo. See Exhibit B (Second Amended Complaint at 26–27; Bill of Lading). Due to mishandling, the cargo was damaged in transit while under the care of GBT and, as such, the buyer rejected it. Second Amended Complaint ¶¶ 20–22. Landstar reimbursed its customer, the seller of the cargo, who assigned its rights against Tanda and GBT to Landstar. Id. ¶¶ 23–26. Landstar

---

[3] In paragraph 48 of the Second Amended Complaint, Landstar alleges: "JC acted as a property broker pursuant to 49 U.S.C. § 14916 when it contracted JC to transport the Shipment from Chesapeake, Virginia to Pleasant Prairie, Wisconsin." The Court reads the second reference to "JC" as a typo and concludes that Landstar meant to allege that Tanda ("JC") contracted GBT.

now brings various claims against Tanda and GBT to recover its losses. Id. at 8–14. The only claim at issue in the Motion is the claim in Count III, which Landstar brings against Tanda for unlawful brokerage activities under the Moving Ahead for Progress in the 21st Century Act (MAP-21 Act), 49 U.S.C. § 14916. Id. ¶¶ 45–50.

## III. Discussion

Congress enacted the MAP-21 Act in 2012 against the backdrop of its comprehensive regulation of the interstate trucking industry.[4] As relevant to this action, the legislation provides:

> (a) Prohibited activities. A person <u>may provide interstate brokerage services as a broker</u> only if that person—
> (1) is registered under, and in compliance with, section 13904; and
> (2) has satisfied the financial security requirements under section 13906.
>
> …
>
> (c) Civil penalties and private cause of action. Any person who knowingly authorizes, consents to, or permits, directly or indirectly, either alone or in conjunction with any other person, a violation of subsection (a) is liable—
>
> …

---

[4] For an overview of the statutory scheme affecting the interstate trucking industry, see Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 256 (2013) (describing the history and enactment of the Federal Aviation Administration Authorization Act (FAAAA)); UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc., 750 F.3d 1282, 1285–86 (11th Cir. 2014) (describing the purpose and operation of the Carmack Amendment).

> (2) to the injured party for all valid claims incurred without regard to amount.
> (d) Liable parties. The liability for civil penalties and for claims under this section for unauthorized brokering shall apply, jointly and severally—
> (1) to any corporate entity or partnership involved; and
> (2) to the individual officers, directors, and principals of such entities.

49 U.S.C. § 14916 (emphasis added). According to Tanda, § 14916 of the MAP-21 Act does not apply to it because federal law specifically defines "brokers" as excluding carriers like Tanda. Motion at 4–6 (citing 49 U.S.C. § 13102(2) to define "broker"). Landstar counters that the relevant inquiry is not the status of the entity as a "motor carrier" or "broker," but rather whether the entity performed "brokerage services" on a particular occasion without the proper licensing. Response at 5–10. Because § 14916 specifically requires both that the entity provide brokerage services and that it do so <u>as a broker</u>, the Motion is due to be granted.

Federal law defines a "broker" as "a person, <u>other than a motor carrier</u> or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2) (emphasis added). A "motor carrier" is "a person providing motor vehicle transportation for compensation." <u>Id.</u> § 13102(14). Section 13102 does not define "brokerage services," but a

Department of Transportation (DOT) regulation sets forth DOT's view that "brokerage service is the arranging of transportation or the physical movement of a motor vehicle or of property." 49 C.F.R. § 371.2. DOT regulations also state that "[m]otor carriers … are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport." Id.[5] The Eleventh Circuit Court of Appeals previously considered these definitions of the terms "broker" and "motor carrier" in the context of a Carmack Amendment case (where federal law provides a remedy against motor carriers but not against brokers). See Essex Ins. Co. v. Barrett Moving & Storage, Inc., 885 F.3d 1292, 1299–302 (11th Cir. 2018). In doing so, the Eleventh Circuit noted that throughout the Interstate Commerce Act, brokers "are purposefully distinguished from motor carriers." Id. at 1300. The court also endorsed DOT's definition of the term "broker" as well as its distinction between brokers and motor carriers. Id. at 1300–01 (holding that an entity is a carrier under the Carmack Amendment when it "has agreed with the shipper to accept legal responsibility for that shipment").

---

[5] In accordance with Loper Bright Enterprises v. Raimondo, the Court does not defer to DOT's definitions, but may consider the various "'factors which give [the definitions] power to persuade … .'" See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 388 (2024) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

Notably, in a given transaction, an entity can be classified as a motor carrier or as a broker, but not both. See 5K Logistics, Inc. v. Daily Exp., Inc., 659 F.3d 331, 335 (4th Cir. 2011) ("[T]here is no overlap in the statute between 'carriers' and 'brokers' … .").

With this context in mind, the Court concludes that § 14196 does not apply to a motor carrier when it simply subcontracts the carriage of goods for which it is responsible. At the outset, the plain terms of § 14196 apply to a person only when it "provide[s] interstate brokerage services as a broker," not to any person that provides brokerage services. 49 U.S.C. § 14916(a). Given that brokers are "purposefully distinguished" from motor carriers throughout the Interstate Commerce Act, see Essex, 885 F.3d at 1300, § 14196 does not apply to a person when it provides interstate brokerage services as a motor carrier. To conclude otherwise would read § 14196 as prohibiting motor carriers from subcontracting, which would mark a dramatic shift to Congress's longstanding regulation in the interstate transportation industry, not to mention the common law principle that contracts can be delegated freely. See id. at 1301 ("At common law, a bailee was responsible for loss of a bailment if the bailee, without the permission of the bailor, entrusted a sub-bailee with care of the item and the item was lost while in the possession of the third party."). The Court declines to read such a dramatic shift in the industry's regulatory structure into a provision

that says nothing about motor carriers or subcontracting. See Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."). And reading the MAP-21 Act as excluding motor carriers undermines no policy objectives considering that Congress, through the Carmack Amendment, has already provided shippers a strict liability remedy against motor carriers when subcontractors damage cargo, regardless of whether the cargo was in the motor carrier's possession at the time of the loss. See 49 U.S.C. § 14706(a)(1); UPS Supply Chain Sols., 750 F.3d at 1285–87 (motor carrier was liable under the Carmack Amendment even though the motor carrier subcontracted the shipment); Essex, 885 F.3d at 1301 ("[W]hen a party holds itself out as the party responsible for the care and delivery of another's property, it cannot outsource its contractual responsibility by outsourcing the care and delivery it agreed to provide. … We therefore hold that a party is not a broker under the Carmack Amendment if it has agreed with the shipper to accept legal responsibility for that shipment.").[6]

---

[6] In the Second Amended Complaint, Landstar brings a Carmack Amendment claim against GBT. See Second Amended Complaint ¶¶ 40–44.

While the parties focus solely on Tanda's licensing, determining whether an entity acted as a broker or a motor carrier is an "'inherently fact-intensive'" inquiry turning not on how the entity is registered, but how it held itself out in a particular transaction. See Essex, 885 F.3d at 1302 (quoting Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc., No. 09 Civ. 2365 (PGG), 2011 WL 671747, at *5 (S.D.N.Y. Feb. 18, 2011)). Notably, multiple motor carriers can be responsible for the same shipment. See 49 U.S.C. § 14706(a)(1) ("That carrier and any other carrier … are liable" (emphasis added)); Ever Better Eating, Inc. v. Jama's Express LLC, No. 8:21-cv-1798-CEH-CPT, 2022 WL 17782391, at *8 (M.D. Fla. Dec. 19, 2022) ("[T]he existence of one carrier does not preclude the liability of other carriers, because the Carmack Amendment expressly provides for the liability of more than one carrier.").[7]

Here, while Landstar states multiple times in the Second Amended Complaint that Tanda acted as a broker, these statements are legal conclusions which the Court disregards. See Second Amended Complaint ¶ 48 ("[Tanda] acted as a property broker pursuant to 49 U.S.C. § 14916 … ."); id. ¶ 49 ("[Tanda], acting as a property broker, unlawfully tendered the Shipment to

---

[7] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

GBT."); id. ¶ 50 ("[Tanda] violated 49 U.S.C. § 14916 when it knowingly engaged in unlawful brokering activities … ."). Landstar presents only two factual allegations that arguably support the conclusion that Tanda acted as a broker. First, Landstar alleges that Tanda subcontracted the shipment. But subcontracting does not transform a motor carrier into a broker under the MAP-21 Act or the Interstate Commerce Act more broadly. See 49 C.F.R. § 371.2 ("Motor carriers … are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport."). Second, in the Bill of Lading, the section defining the carrier has a handwritten entry identifying GBT, which suggests that Tanda never accepted physical responsibility for the shipment. Bill of Lading at 1. The parties have not briefed whether accepting physical responsibility for the shipment is a relevant consideration under Essex for determining whether an entity has accepted legal responsibility and thus acted as a motor carrier. See Essex, 885 F.3d at 1301. In any event, the Eleventh Circuit has held that a motor carrier can be liable under the Carmack Amendment even when it subcontracts the entire carriage. See UPS Supply Chain Sols., 750 F.3d at 1285–87. The bulk of Landstar's allegations, including the provisions in the Contract and Load Confirmation, support the conclusion that Tanda accepted

legal responsibility for the shipment. See, e.g., Contract ¶ 8 ("[Tanda] shall be wholly responsible for performing the contemplated transportation … ."); see also Landstar Ranger, Inc. v. Triple M Logistics, Inc., No. 3:22-cv-56-HES-LLL, 2023 WL 4925870, at *3 (M.D. Fla. June 28, 2023) (finding at summary judgment that a company acted as a motor carrier because a written contract stated that the company was solely responsible for claims of loss); Kondos v. Cobra Van Lines, LLC, No. 0:24-cv-61119-DSL, 2024 WL 5264452, at *3–4 (S.D. Fla. Nov. 27, 2024) (dismissing a MAP-21 claim when the plaintiff failed to allege facts supporting that the defendant acted as a broker and alleged only that the defendant hired contract laborers to unload and move the cargo).

Accordingly, it is

**ORDERED:**

1. Defendant, JC Tanda Transport, Inc.'s, Unopposed Motion for Hearing Regarding Dispute on Motion to Dismiss (Doc. 36) is **DENIED**.

2. Defendant, JC Tanda Transport, Inc.'s, Motion to Dismiss Count III of Plaintiff's Second Amended Complaint (Doc. 32) is **GRANTED**.

3. Count III of Plaintiff's Second Amended Complaint (Doc. 30) is **DISMISSED**.

**DONE AND ORDERED** in Jacksonville, Florida this 27th day of February, 2025.

*[signature]*

MARCIA MORALES HOWARD
United States District Judge

lc33

Copies to:
Counsel of Record